[No. C057782. Third Dist. July 9, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY WAYNE STUCKEY, Defendant and Appellant.

900

## COUNSEL

Harry Zimmerman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, David A. Rhodes, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—As we shall explain in a moment, defendant Gary Wayne Stuckey was convicted of a variety of drug offenses.

In hopes of being reinstated on probation and avoiding prison, defendant asked the trial court to appoint a psychotherapist and a drug treatment counselor to help him present addiction treatment options at the sentencing hearing. The trial court denied defendant's motions, stating that it did not need expert testimony to help make the sentencing choice in this case. At the conclusion of a sentencing hearing in which defense counsel and defendant himself vigorously argued that this case compelled reinstatement of probation, the trial court imposed the seven year eight month prison sentence to which defendant had agreed in an earlier plea bargain.

On appeal, defendant contends that Evidence Code section 730 requires the appointment of experts at public expense whenever an indigent criminal defendant shows experts to be reasonably necessary. Even in the absence of statutory authorization, defendant claims that appointment of experts for indigent criminal defendants is required by the equal protection, due process, and right to effective assistance of counsel guarantees in the federal Constitution. Defendant further argues that such appointment of experts is also required by sections 7 and 15 in article I of the California Constitution. We disagree with all of this.

As we shall explain, Evidence Code section 730 does not authorize the appointment of experts after trial in connection with sentencing proceedings. Nor do the federal and state Constitutions entitle an indigent criminal defendant to improve his chances of a favorable sentencing choice by having experts echo the arguments of defense counsel. Although appointment of experts may be required when a defendant shows that they are necessary to formulate an affirmative defense to criminal charges or to rebut an expert witness retained by the prosecution to render an expert opinion at sentencing, a defendant may not require the trial court to appoint experts at public expense merely to supplement the arguments of counsel at sentencing. Accordingly, we shall affirm.

## BACKGROUND

We dispense with reciting the circumstances of defendant's underlying offenses because he does not assert any error occurring prior to his postconviction motions for appointment of defense experts. Defendant's statutory and constitutional arguments focus solely on the trial court's refusal to appoint experts for the sentencing hearing. We therefore turn to the pertinent procedural history of the case.

### Defendant's Convictions and Violations of Probation

On February 2004, in case No. SF090601A, defendant entered a negotiated plea of guilty to possession of methamphetamine for sale (Health & Saf. Code, § 11378), transportation of methamphetamine (Health & Saf. Code, § 11379), resisting an officer (Pen. Code, § 148), and admitted a prior drug conviction (Health & Saf. Code, § 11370.2, subd. (a)). Defendant entered his plea and admission in exchange for a court-indicated judgment of a state prison sentence of seven years eight months, with execution of sentence suspended, and a grant of probation with a year in county jail followed by a residential drug treatment program. In March 2004, the court imposed the agreed-upon prison term, suspended execution of sentence, and granted probation.

When defendant was found to be ineligible for the residential drug treatment program due to a prior conviction for lewd and lascivious act on a child age 14 to 15 (Pen. Code, § 288, subd. (c)), the trial court modified the condition to allow him to enter a Salvation Army program instead.

In June 2005, in case No. SF096230A, defendant entered a guilty plea to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), occurring on May 23, 2005, and the trial court ordered Proposition 36 probation.

In March 2006, a petition for violation of probation in case No. SF096230A alleged that defendant was terminated from the drug treatment program for a positive drug test and unexcused absences. The court revoked probation and issued a bench warrant for defendant's arrest.

In April 2006, a petition for violation of probation in case No. SF090601A alleged that defendant's whereabouts were unknown. The trial court revoked probation and issued a bench warrant for his arrest.

In June 2007, defendant, then in custody, denied the probation violation allegations in both petitions.

According to an affidavit filed by the prosecution, defendant was charged in case No. SF099565A with possession of methamphetamine, occurring on March 10, 2006, and he was held to answer. In case Nos. SF090601A and SF096230A, the court found that defendant was in violation of probation.

### Defense Request for Appointment of Experts

Prior to sentencing, privately retained defense counsel filed ex parte motions in case No. SF090601A for the appointment of two experts: a psychotherapist and a drug treatment evaluator. Defense counsel explained that he needed a drug treatment evaluator "to assist the defense in determining and procuring viable, post-incarceration structured rehabilitation options that can be considered in the disposition of this matter." Defense counsel further stated that he could not effectively represent defendant without an expert in "addiction, abuse, and recovery" who could recommend effective treatment providers and facilities and who could determine the likelihood of defendant's favorable response to such treatment. Defense counsel believed that the court had several sentencing options, including residential treatment as a condition of probation.

Defense counsel also requested the appointment of a psychotherapist to determine whether defendant should be reinstated on probation and whether he would respond in a favorable manner to mental health treatment as a condition of probation. Counsel stated that defendant committed the offenses due to a mental condition not amounting to a defense, elaborating in his statement in mitigation that the mental condition he believed defendant suffered from was addiction.

### Denial of Motions for Appointment of Experts

At sentencing, the court stated that it had reviewed defendant's ex parte motions, the probation officer's report, and defendant's statement of probation

eligibility and mitigation. Defense counsel requested a continuance to allow for appointment of and examination by the psychotherapist and by the drug treatment evaluator. The prosecutor countered that defendant had agreed in entering his plea in 2004 that if he violated probation by committing a new crime, the previously imposed sentence of seven years eight months would be executed, noting that the court granted probation in 2004 over the prosecutor's objection. The prosecutor requested immediate sentencing, suggesting that defendant could pursue treatment in prison.

The trial court denied defendant's motions. The trial court said: "I don't think that it's necessary at this stage of the game to appoint another substance evaluator. The [d]efendant was given an opportunity of probation once before over the objection of the People, the probation officer and everything else. And so I don't think it's necessary to hold another—have somebody else examine him and give us another opinion at this point. [¶] This is simply a garden variety and another one of many, many unfortunate cases that we see here all the time of people that use drugs. And the law hasn't been able to figure out any better way to handle it other than the laws that exist."

The court imposed the previously agreed upon sentence of seven years eight months in prison in case No. SF090601A. In case No. SF096230A, the court reinstated defendant on probation, converting the Proposition 36 probation to informal probation. The court granted the prosecutor's motion to dismiss case Nos. SF099565A (possession of methamphetamine) and SM249829 (Pen. Code, § 273.5, a misdemeanor) in light of the prison sentence.

Defendant appeals.

## DISCUSSION

## I

### Evidence Code Section 730's Applicability to Sentencing Hearings

Defendant presents several challenges to the trial court's denial of his motions for appointment of experts under Evidence Code section 730. He contends the experts were necessary because the three and a half years since his last evaluation rendered the prior information stale. He argues that the probation report was inaccurate. He claims the court applied an erroneous legal standard under Evidence Code section 730. Finally, he asserts that the trial court failed to tailor its decision to this case. We conclude that none of these claims has merit.

■ As we shall explain, Evidence Code section 730 provides for appointment of ancillary services at public expense for indigent criminal defendants in noncapital cases only for purposes of defense at trial on the issue of guilt.[1] Defendant's request for experts to assist his attorney at the sentencing hearing is unauthorized by statute.

## Statutory Provision for Appointment of Experts upon Request of Indigent Defendants in Noncapital Cases

■ Upon court order, California provides indigent criminal defendants in noncapital cases with ancillary services at county expense. (Evid. Code, § 731, subd. (a); Gov. Code, § 29603 ["The sums required by law to be paid to the grand and trial jurors and witnesses in criminal cases tried in a superior or municipal court are county charges."].)[2] A court may order the appointment of experts at public expense even when a defendant has privately retained counsel or is self-represented so long as the defendant shows both inability to pay for the experts and their necessity in presenting a defense at trial. (Evid. Code, § 730; *People v. Faxel* (1979) 91 Cal.App.3d 327, 329 [154 Cal.Rptr. 132]; but cf. Cal. Criminal Law: Practice and Procedure (Cont.Ed.Bar 2009) § 18.13, p. 491 ["nonindigent defendants will be hard-pressed to demonstrate the need for a court-appointed expert . . ."].)

■ Evidence Code section 730 sets forth the criteria for appointment of experts in noncapital cases. Approaching the issue of statutory interpretation, we are mindful of the California Supreme Court's explanation that "[i]n construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the

---

[1] Although defendant in this case requested only the appointment of experts, ancillary services can also include investigators, law clerks, and other persons who are necessary to aid counsel in formulating a defense. (*Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 318–319 [204 Cal.Rptr. 165, 682 P.2d 360] (*Corenevsky*).) The statutory and constitutional analysis for appointment of experts is the same as for other ancillary services such as investigators and law clerks. (See *ibid.*)

[2] Indigent criminal defendants previously convicted of murder who are currently charged with second degree murder "may request the court for funds for the specific payment of investigators, experts, and others for the preparation . . . of the defense" under the same statute that authorizes ancillary services for defendants in capital cases. (Pen. Code, § 987.9, subd. (a); see *id.*, § 190.05, subd. (a).) Ancillary services in these second degree murder prosecutions are to be paid by the state and are an exception to the rule that counties bear the cost of defense experts and investigators in noncapital cases. (Evid. Code, § 731; Pen. Code, § 987.9, subd. (c).)

legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' " (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

Evidence Code section 730 provides, in relevant part: "When it appears to the court, *at any time before or during the trial of an action*, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and *to testify as an expert at the trial of the action* relative to the fact or matter as to which the expert evidence is or may be required." (Italics added.)

Given this language, we must determine what Evidence Code section 730 means when it provides for appointment of experts during "trial of an action." Case law has long recognized that a "trial" in a criminal case ends when a verdict is returned and the jury is discharged. Thus, " '[w]ith the assent of the jury to the verdict as recorded, . . . the trial is closed'; and 'after the verdict is received and the jury discharged, . . . the control of the jury and of the court over such verdict is at an end.' " (*People v. Lee Yune Chong* (1892) 94 Cal. 379, 385 [29 P. 776] [reversed judgment where trial court called jurors back after discharge to fix defective verdict that failed to specify degree of murder]; accord, *People v. Bonillas* (1989) 48 Cal.3d 757, 771–774 [257 Cal.Rptr. 895, 771 P.2d 844] [jury's correction of verdict was authorized because they had not been discharged but merely excused to await penalty phase of capital murder case]; *People v. Thornton* (1984) 155 Cal.App.3d 845, 852–853 [202 Cal.Rptr. 448].) The language that the jury's functions cease with their assent to a recorded verdict must be construed as applying to a final assent followed by a discharge. (*Lee Yune Chong, supra*, 94 Cal. at p. 385.)

*Mitchell v. United States* (1999) 526 U.S. 314 [143 L.Ed.2d 424, 119 S.Ct. 1307] said a guilty plea in which the defendant waived the right "at trial" to invoke the privilege against self-incrimination did not waive the right to invoke the privilege at sentencing. (526 U.S. at pp. 323–324.) The Fifth Amendment's right against self-incrimination expressly applies to any "criminal case," not "criminal trial," and "criminal case" includes sentencing. (526 U.S. at p. 327.) Justice Scalia observed in his dissent in *Mitchell, supra*, 526 U.S. at page 337, "Our case law has long recognized a natural dichotomy between the guilt and penalty phases. The jury-trial right contained in the Sixth Amendment—whose guarantees apply '[i]n all criminal prosecutions,' . . .—does not apply at sentencing. [Citation.] Nor does the Sixth Amendment's guarantee of the defendant's right 'to be confronted with

the witnesses against him.' . . . Likewise inapplicable at sentencing is the requirement of the Due Process Clause that the prosecution prove the essential facts beyond a reasonable doubt. [Citation.]"

The California Supreme Court has also similarly distinguished trials from sentencing. In holding that Proposition 8 (Cal. Const., art. I, § 28) did not apply to the appeal of a crime committed after its adoption, *People v. Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149], said a contrary inference was not compelled by the provision's application to "any criminal proceeding," because in context that phrase "is plainly meant to ensure that section 28(d) will operate not only in criminal *trials* but also in other stages of a prosecution in which evidence is offered, such as . . . sentencing proceedings." (*Id.* at p. 259, fn. 3.)

Nonetheless, we note that courts have sometimes employed more than one meaning for the term "trial" in criminal actions. (Compare *People v. Stokes* (1907) 5 Cal.App. 205, 214 [89 P. 997] ["A trial is 'the examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause, for the purpose of determining such issue.' [Citations.] *Pronouncing judgment, which is the formal declaration of sentence, is not the trial, nor any part thereof*" (italics added)] with *People v. Brown* (1968) 260 Cal.App.2d 745, 750–751 [67 Cal.Rptr. 288] ["Although in certain contexts the expression 'brought to trial' might possibly encompass only that portion of the criminal proceeding which results in a determination of the accused's guilt or innocence, it is clear that as used in [Penal Code] section 1381.5 it includes the entry of a judgment or other final, appealable order" for purposes of the constitutional right of a defendant to speedy trial].)

■ The possibility that "trial," as used in Evidence Code section 730, may include sentencing proceedings renders the term ambiguous. (5) "When the words are susceptible to more than one reasonable interpretation, we consider a variety of extrinsic aids, including the statutory context . . . ." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 582 [41 Cal.Rptr.2d 878, 896 P.2d 171]; see *People v. Canty* (2004) 32 Cal.4th 1266, 1277 [14 Cal.Rptr.3d 1, 90 P.3d 1168]; *People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].)

Examining Evidence Code section 730 in statutory context, we discern that the requirement that motions for appointment of experts be filed before or during "trial" excludes sentencing. "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject must be harmonized to the extent possible." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) We therefore examine section 730 in context of

both the Evidence Code where it is found and the Penal Code where "trial" is most clearly defined for criminal actions.

■ Evidence Code section 731 addresses payment for the experts appointed pursuant to Evidence Code section 730. Subdivision (a) of section 731 states that "[i]n all criminal *actions* and juvenile court proceedings, the compensation fixed under Section 730 shall be a charge against the county in which such *action* or proceeding is pending and shall be paid out of the treasury of such county on order of the court." (Italics added.) Section 731 thus refers to the totality of the criminal case as an "action." Section 730 also uses "action" to refer to a criminal case in the trial court. But section 730 indicates that motions for appointment of experts are available during only a portion of the case by limiting the time for appointment motions to *"the trial of* an action." (Italics added.) Were we to allow motions for appointments of experts to be made during the entirety of a criminal action, we would render the limiting phrase "before or during the trial of" (*ibid.*) nugatory and mere surplusage. This we cannot do. (*Smith v. Superior Court, supra*, 39 Cal.4th at p. 83.)

The delineation of when trial ends becomes clear when considering the meaning of "trial" in the context of Penal Code provisions addressing the scope of trial and remedy for errors occurring during that portion of a criminal action. Penal Code section 1093 sets forth the presumptive sequence of events at trial, noting that trial begins with the filing of a complaint and proceeds through instruction of the jury.[3] Section 1093 does not include sentencing within its specifications for order of trial proceedings.

---

[3] Penal Code section 1093 provides: "The jury having been impaneled and sworn, unless waived, the trial shall proceed in the following order, unless otherwise directed by the court: [¶] (a) If the accusatory pleading be for a felony, the clerk shall read it, and state the plea of the defendant to the jury . . . . [¶] (b) The district attorney . . . may make an opening statement in support of the charge. Whether or not the district attorney . . . makes an opening statement, the defendant or his or her counsel may then make an opening statement, or may reserve the making of an opening statement until after introduction of the evidence in support of the charge. [¶] (c) The district attorney . . . shall then offer the evidence in support of the charge. The defendant or his or her counsel may then offer his or her evidence in support of the defense. [¶] (d) The parties may then respectively offer rebutting testimony only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case. [¶] (e) When the evidence is concluded, unless the case is submitted on either side, or on both sides, without argument, the district attorney, or other counsel for the people, and counsel for the defendant, may argue the case to the court and jury; the district attorney, or other counsel for the people, opening the argument and having the right to close. [¶] (f) The judge may then charge the jury, and shall do so on any points of law pertinent to the issue . . . . Upon the jury retiring for deliberation, the court shall advise the jury of the availability of a written copy of the jury instructions. The court may, at its discretion, provide the jury with a copy of the written instructions given. However, if the jury requests the court to supply a copy of the written instructions, the court shall supply the jury with a copy."

■ Most instructive on the issue before us are the provisions of the Penal Code relating to motions for new trial. These provisions contemplate that new trial motions must be made before the court sentences a defendant. Penal Code section 1168 requires that trial precede and be separate from sentencing when it instructs that "[e]very person who commits a public offense . . . be sentenced pursuant to Chapter 4.5" of the Penal Code unless the court has granted a motion for new trial. Likewise Penal Code section 1182 provides: "The application for a new trial must be made and determined before judgment, the making of an order granting probation, the commitment of a defendant for observation as a mentally disordered sex offender, or the commitment of a defendant for narcotics addiction or insanity, whichever first occurs . . . ." (See also Pen. Code, § 1202 ["If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion before pronouncing judgment or the making of an order granting probation, then the defendant shall be entitled to a new trial."].) Trial ends with a verdict because a motion for new trial "is a reexamination of the issue in the same Court, before another jury, after a verdict has been given." (Pen. Code, § 1179.) If a motion for new trial must be made before sentencing, then sentencing cannot be a part of the trial.

In determining the demarcation between the trial and nontrial portion of an action for purposes of Evidence Code section 730, we also consider a number of other factors, including the ostensible objects to be achieved by the statute and the problems intended to be remedied. "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Sinohui* (2002) 28 Cal.4th 205, 212 [120 Cal.Rptr.2d 783, 47 P.3d 629].) Our conclusion that "trial" does not include sentencing is most in keeping with the purpose of Evidence Code section 730's provision for the appointment of defense experts. The adversarial nature of trial on the issue of guilt may require defense experts to rebut prosecution experts on contested issues or to present an affirmative defense, such as insanity. Indeed, as Evidence Code section 730 itself states, one purpose of the appointment of an expert is to have the expert "testify as an expert at the trial of the action." When a case moves from trial to sentencing in a noncapital case, however, the adversarial character of the proceeding abates. (See *In re Calhoun* (1976) 17 Cal.3d 75, 84 [130 Cal.Rptr. 139, 549 P.2d 1235] [noting that "the full adversary safeguards of trial need not apply in the sentencing procedure . . ."].)

■ The most prominent role in informing the court of defendant's history and available sentencing options in pronouncing judgment is played by the probation department. The probation department is not an agent of either party but rather reports to the court itself. (Pen. Code, § 1203, subd. (b)(1),

(2)(A).) Thus, the Penal Code's provision for probation reports before sentencing anticipates that trial courts will be informed primarily through a neutral source rather than partisan experts. Of course, the court always has the power to appoint its own experts to assist the court, if the need arises. (*Johnson v. Banducci* (1963) 212 Cal.App.2d 254, 260 [27 Cal.Rptr. 764] [noting that trial courts have inherent "power to obtain evidence upon which the judgment of the court may rest"]; see also *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203] [holding that " 'all courts have inherent supervisory or administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority' "]; *Joe Z. v. Superior Court* (1970) 3 Cal.3d 797, 801–802 [91 Cal.Rptr. 594, 478 P.2d 26] [holding that trial court has inherent power "to develop rules of procedure aimed at facilitating the administration of criminal justice and promoting the orderly ascertainment of the truth"].)

We therefore hold that where Evidence Code section 730 authorizes the appointment of an expert "at any time before or during the trial of an action," to "testify as an expert at the trial of the action," the "trial" does not include sentencing proceedings that necessarily occur after a determination of guilt.

In this case, defendant requested the appointment of experts *after* he was convicted. That he may have been convicted by plea makes no difference because his request for experts pursuant to Evidence Code section 730 was not made before or during trial.

We decline to extend the statutory authorization for appointment of experts to requests made after trial. If experts are to become statutorily authorized for purposes of sentencing, it is a matter for the Legislature to so provide. (*Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 711 [252 Cal.Rptr. 613].) Until the Legislature amends the clear limitation on when experts may be sought by defense counsel, orders for appointment of experts made after trial exceed the statutory authorization of Evidence Code section 730. Thus, we conclude that the trial court lacked a statutory basis to grant defendant's motions for a psychotherapist and drug treatment counselor.

Because experts could not have been appointed under Evidence Code section 730 at the time when defendant made his request, the possibility that the trial court misunderstood the "reasonably necessary" standard in denying his motions is irrelevant. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776 [84 Cal.Rptr.2d 276] ["If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion."].) We therefore reject defendant's argument that the trial court employed the wrong standard for appointment of experts under section 730.

We also reject defendant's assertions of inaccuracies in the probation report and that the trial court was mistaken about the nature of one of the offenses for which defendant was convicted. Defendant has placed each of these contentions under the rubric of error arising out of the denial of defense experts for the sentencing hearing. Even apart from our conclusion that his request was unauthorized by Evidence Code section 730, we find that defendant fails to explain why any inaccurate description of historical facts in the probation report would require a psychotherapist or drug treatment evaluator to correct the report. Whether defendant had left the state or had been employed in California has no relevance to his continued drug abuse or addiction. We are unconvinced that the appointment of experts would have corrected the alleged inaccuracies.

Likewise, we reject defendant's claim that the trial court failed to tailor its decision to defendant's case because the contention is irrelevant to the argument heading under which defendant places it, i.e., error in failing to appoint experts as he requested. In any event, the record shows that the trial court was well aware of defendant's individual circumstances, having indicated its familiarity with his substantial history of offenses and probation violations as well as addiction treatment options available for defendants when placed on probation.

■ In sum, we conclude that defendant had no statutory right to the appointment of a psychotherapist and a drug treatment counselor for purposes of sentencing. Evidence Code section 730 limits the trial court to appointing experts for the defense when requested before or during trial for purposes of formulating a defense or testifying on a contested fact at trial. Finding no statutory support for defendant's claim, we next examine whether the federal and state Constitutions require the appointment of experts in the circumstances of this case.

## II

### Constitutional Entitlement to Appointment of Experts in Noncapital Cases

■ Defendant contends the trial court's denial of appointment of defense experts for the sentencing hearing violated his federal constitutional rights to due process, equal protection, and effective assistance of counsel. He further asserts that the due process and right to counsel clauses in the California Constitution provide additional support for his claim of the right to appointment of defense experts. (Cal. Const., art. I, §§ 7, 15.) We disagree. Nothing in the federal or state Constitutions requires a trial court to appoint experts to serve as surrogate advocates echoing the arguments of defense

counsel at sentencing hearings. The trial court did not commit error in denying defendant's request for experts to address sentencing choices with which the court expressed familiarity.

## A. Due Process

The United States Supreme Court first declared the right of indigent criminal defendants to appointment of experts at public expense in *Ake v. Oklahoma* (1985) 470 U.S. 68 [84 L.Ed.2d 53, 105 S.Ct. 1087] (*Ake*). In *Ake*, the high court reasoned that "when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." (*Id.* at p. 76.) Thus, the Supreme Court held that the Oklahoma trial court erred in refusing to appoint a psychiatrist for a potential insanity defense in a capital case in which defendant's "behavior . . . was so bizarre" at the arraignment "that the trial judge, *sua sponte*, ordered him to be examined by a psychiatrist" as to whether he was competent to stand trial. (*Id.* at p. 71.) Due process required the appointment of an expert because "a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." (*Id.* at p. 77.)

The ability to prepare a defense to criminal charges is the touchstone of the right to appointment of defense experts. A trial court must appoint an expert for a defendant when necessary to address what is "likely to be a significant factor *at trial*." (*Ake, supra*, 470 U.S. at p. 74, italics added.) Thus, the test for constitutional entitlement to appointment of defense experts focuses on whether a defendant requires assistance on an issue relating to guilt. Except for the penalty phase of capital cases, entitlement to defense experts is a right to prepare a defense to the criminal charges.[4]

---

[4] Sentencing hearings in which the trial court selects the most appropriate disposition in noncapital cases stand in contrast to the penalty phase of a capital case in which a jury is called to decide whether a defendant should receive the death penalty. *Ake* therefore recognized that the defendant in that capital case was not only entitled to appointment of a psychiatrist to tender an insanity defense but also to assist with the penalty phase issue of future dangerousness. (*Ake, supra*, 470 U.S. at pp. 86–87.) As the United States Supreme Court elsewhere recognized, " 'the imposition of death by public authority is . . . profoundly different from all other penalties . . . .' " (*Eddings v. Oklahoma* (1982) 455 U.S. 104, 110 [71 L.Ed.2d 1, 102 S.Ct. 869], quoting *Lockett v. Ohio* (1978) 438 U.S. 586, 605 [57 L.Ed.2d 973, 98 S.Ct. 2954].)

 Due process safeguards the right of a defendant to a full and fair hearing on the issue of guilt. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302 [35 L.Ed.2d 297, 93 S.Ct. 1038] [holding that when "constitutional rights directly affecting the ascertainment of guilt are implicated" a state cannot implement evidentiary rules "to defeat the ends of justice"].) By contrast, the Constitution does not demand the "full panoply of rights" at sentencing hearings. (*People v. Betterton* (1979) 93 Cal.App.3d 406, 411 [155 Cal.Rptr. 537]; see also *Williams v. New York* (1949) 337 U.S. 241, 246–247 [93 L.Ed. 1337, 69 S.Ct. 1079].) Rather than focusing on factfinding, sentencing is addressed to the trial court's "power of decision exercised to the necessary end of awarding justice based upon reason and law but for which decision there is no special governing statute or rule." (*People v. Crandell* (1988) 46 Cal.3d 833, 863 [251 Cal.Rptr. 227, 760 P.2d 423], abrogated on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 361 [121 Cal.Rptr.2d 580, 48 P.3d 1136].)

The trial court's discretion in sentencing, however, is not unfettered. When the initial sentencing court imposes a state prison sentence but stays execution of the sentencing pending completion of probation, on a subsequent violation of probation the court does not have discretion to change the previously indicated sentence. (*People v. Medina* (2001) 89 Cal.App.4th 318, 322 [106 Cal.Rptr.2d 895].) The court does have discretion to reinstate probation. (*Id.* at pp. 321–322.) Reinstatement of probation, however, requires a determination by the trial court that the interests of justice so require. (*Id.* at p. 321.) What the interests of justice require in a particular case constitutes a question uniquely addressed to the broad judicial discretion of the trial court. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 512–513 [53 Cal.Rptr.2d 789, 917 P.2d 628].)

Here, the court did not abuse its broad discretion in determining that it was not necessary at the time of sentencing in 2007 to appoint another substance abuse evaluator. In 2004, defendant had been previously sentenced to seven years eight months, execution of sentence suspended. At that time, the court stated that it was giving defendant one "last chance" to succeed in resolving his addiction problem. Defendant was unsuccessful. He had a pending case for possession of methamphetamine for which he had been held to answer (case No. SF099565A). At sentencing on December 10, 2007, defendant admitted that he relapsed when his grandfather died. There was no factfinding required by an expert for the court to know that defendant was addicted and unlikely to succeed on probation and that his case was not an unusual one requiring reinstatement on probation to serve the interests of justice (Pen. Code, § 1203, subd. (e)).

 Based on its evaluation of defendant's prior conduct, the trial court found that defendant's case was the same as many other cases involving people addicted to drugs. Thus, the court found an updated evaluation would add nothing of import. The information that defendant was addicted was not stale. There was no need for an update "as to whether defendant's addiction was the cause of his relapse" as defendant claims. "Of course, the trial court is never obliged to appoint an expert to assist it in making a factual, much less a legal, determination under Evidence Code section 730 unless, as that section provides, 'it appears to the court . . . that expert evidence is . . . required.' " (*In re Eric A.* (1999) 73 Cal.App.4th 1390, 1394, fn. 4 [87 Cal.Rptr.2d 401], italics omitted.)

 Partisan experts for the defense may be necessary to counter the testimony of partisan experts retained by the prosecution to render an expert opinion at sentencing. This is so because, as Justice Cardozo observed, "a defendant may be at an unfair disadvantage, if he is unable because of poverty to parry by his own witnesses the thrusts of those against him." (*Reilly v. Berry* (1929) 250 N.Y. 456, 461 [166 N.E. 165, 167].) Here, however, the prosecution did not rely on expert witnesses to render an expert opinion at sentencing. This is not a case in which proceedings were rendered unfair due to the prosecution's introduction of expert witness testimony on a contested issue for which defendant lacked the aid of a defense expert.

In sum, the trial court's denial of defendant's motions did not render the sentencing hearing fundamentally unfair. Counsel for both sides argued with vigor, and the trial court made a reasoned decision. Forcing the trial court to listen to expert testimony regarding sentencing choices with which it was already familiar would not have made the sentencing hearing fairer. Accordingly, the trial court did not violate defendant's due process rights under the federal and state Constitutions in denying the appointment of defense expert witnesses for the sentencing hearing.

## B. Effective Assistance of Counsel

 Although the United States Supreme Court in *Ake* based the entitlement to defense experts only on the constitutional right to due process (*Ake, supra,* 470 U.S. at p. 77), other courts have held that the right to effective assistance of counsel provides additional support for entitlement to defense experts. For example, the court of appeals for the Ninth Circuit has held that appointment was necessary under the right to counsel because "the effective assistance of counsel guarantee of the Due Process Clause requires, when

necessary, the allowance of investigative expenses or appointment of investigative assistance for indigent defendants in order to insure effective preparation of their defense by their attorneys." (*Mason v. State of Arizona* (9th Cir. 1974) 504 F.2d 1345, 1351.) So too, the California Supreme Court has held that "[i]t cannot be doubted that the right to counsel guaranteed by both the federal and state Constitutions includes, and indeed presumes, the right to effective counsel [citations], and thus also includes the right to reasonably necessary ancillary defense services." (*Corenevsky, supra,* 36 Cal.3d at p. 319, fns. omitted, citing Cal. Const., art. I, § 15.)

Even though the right to effective assistance of counsel encompasses entitlement to defense experts, the rights are not coterminous. The California Supreme Court has explained that there is a right to an expert when necessary to respond to the prosecution's expert witnesses, or to establish an affirmative defense. (*Corenevsky, supra,* 36 Cal.3d at p. 320 [recognizing that requests for experts usually occur prior to the commencement of trial when a defendant is still preparing a defense].) Defendant's citations to California case law supporting the appointment of defense experts on grounds of right to effective assistance of counsel prove inapposite because these decisions describe the right to appointment of experts as a *trial* right. Defendant's citations refer us to cases in which the request was made before or during trial in order to provide for a defense on the question of guilt. (*Id.* at pp. 315–316 [pretrial request for expert witnesses, investigators, and law clerks]; *People v. Hurley* (1979) 95 Cal.App.3d 895, 897 [157 Cal.Rptr. 364] [pretrial motions for appointment of expert witness]; *People v. Young* (1987) 189 Cal.App.3d 891, 901 [234 Cal.Rptr. 819] [request for psychiatrist during jury selection]; *People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1304 [32 Cal.Rptr.2d 169] [request for expert to address reliability of eyewitness testimony at trial], disapproved of on other grounds in *People v. Martinez* (1995) 11 Cal.4th 434, 448 [45 Cal.Rptr.2d 905, 903 P.2d 1037].)

The remainder of defendant's cited decisions relate to capital cases in which the penalty phase admits, and may even require, expert testimony. (E.g., *Ake, supra,* 470 U.S. at pp. 86–87 [expert necessary during penalty phase on question of future dangerousness]; *People v. Blair* (2005) 36 Cal.4th 686, 697, 731–732 [31 Cal.Rptr.3d 485, 115 P.3d 1145] [request in capital case for ancillary services under Pen. Code, § 987.9]; *People v. Guerra* (2006) 37 Cal.4th 1067, 1078, 1085 [40 Cal.Rptr.3d 118, 129 P.3d 321] [same]; see also Pen. Code, § 987.9 [providing for experts at state expense, for defendants in capital cases].)

■ The common thread in these cases is the recognition that a defendant may need experts to present affirmative defenses or to negate prosecution expert witnesses in order to have a fair trial on the issue of guilt. On

sentencing issues in noncapital cases, however, a trial court will only rarely need expert assistance in exploring sentencing options. When not needed, in the discretion of the court, the trial court is not required to admit expert testimony. (*In re Eric A., supra,* 73 Cal.App.4th at p. 1394.) Even at trial, a court has authority to exclude experts offering irrelevant testimony. (Evid. Code, § 352.) We conclude the trial court has broad discretion whether to appoint an expert at public expense at sentencing, and that discretion was not abused in this case.

Defendant's right to have counsel argue for a favorable sentencing choice does not include the right to have expert witnesses bolster his attorney's argument. As the Indiana Supreme Court has explained in a case involving the question of right to appointment of experts, "If the requested services could be performed by counsel, an expert need not be provided." (*Scott v. State* (Ind. 1992) 593 N.E.2d 198, 200.) Hence, we reject defendant's argument that his right to counsel also encompassed the right to introduce expert testimony regarding sentencing options.

### C. Equal Protection

The ability of nonindigent criminal defendants to retain experts unavailable to indigent defendants does not by itself establish an equal protection violation. According to the United States Supreme Court, equal protection " 'does not require absolute equality or precisely equal advantages.' " (*Ross v. Moffitt* (1974) 417 U.S. 600, 612 [41 L.Ed.2d 341, 94 S.Ct. 2437].) "The duty of the State . . . is not to duplicate the legal arsenal that may be privately retained by a criminal defendant . . . ." (*Id.* at p. 616.) The United States Supreme Court has not held that the right to appointment of defense experts rests on equal protection grounds. (*Medina v. California* (1992) 505 U.S. 437, 444 [120 L.Ed.2d 353, 112 S.Ct. 2572]; *Ake, supra,* 470 U.S. at p. 87, fn. 13 [stating that it had "no occasion to consider the applicability of the Equal Protection Clause, or the Sixth Amendment" right to counsel to an indigent's request for appointment of experts].) Even while declaring the right to defense experts in certain instances, *Ake* held that "a State [need not] purchase for the indigent defendant [all the necessary] assistance that his wealthier counterpart might buy . . . ." (*Ake, supra,* 470 U.S. at p. 77, citing *Ross v. Moffitt, supra,* 417 U.S. 600.)

In this case, defendant's apparent penury ultimately made no difference in the outcome of his attempt to introduce expert testimony on alternatives to prison for drug-addicted defendants. Even a nonindigent defendant has no right to introduce a defense expert as to sentencing choice when the trial

court expresses no need for guidance. A defendant is entitled only to present testimony of "persons who can give relevant information to the hearing officer." (*People v. Vickers* (1972) 8 Cal.3d 451, 457 [105 Cal.Rptr. 305, 503 P.2d 1313]; see *People v. Pollock* (2004) 32 Cal.4th 1153, 1172 [13 Cal.Rptr.3d 34, 89 P.3d 353].)

Here, the trial court determined that the previously suspended prison sentence should finally be imposed. No expert testimony was necessary or even helpful to the trial court in exercising this judgment because, as the trial court explained, "[W]e are in this impossible conflict trying to help people on the one hand, and at the same time trying to control this drug to prevent other people from getting into it. Now, unfortunately, [defendant] is one of these people that is contributing to the problem. I know that he's probably just a victim of it in the sense that he's an addict, he's using. But he is also continuing to promote the whole problem, because he continues to use. He chips a little bit on the side, he's selling a little bit, he's using a little bit. He keeps the whole thing going. [¶] So what we do—I did in this case, against the strong objections of the People of the State of California, as represented by the District Attorney, and the probation department [was grant defendant] probation here . . . ." But defendant's probation violations and subsequent drug offense caused the court to conclude, "I've given him chance after chance after chance, and so have other judges. He was convicted of another [violation of Health and Safety Code section] 11377, as you know, after he committed this offense in which he was given probation, and the Court gave him Proposition 36 treatment, which was the right thing to do, I will agree. But here he is again. [¶] And so no more. This is the end of the line. So the Court is going to pronounce judgment . . . ." To reach this conclusion, no expert testimony was necessary or even helpful to the trial court in determining that the interests of justice required imposition of a prison term.

Regardless of drug addiction treatment options or the extent of defendant's addiction during his prior offenses and violations of probation, the trial court had discretion to determine that defendant's history and pattern of addiction relapse warranted imposition of the prison term to which he had agreed in an earlier plea bargain. The trial court's statements at sentencing indicate that the result would have been no different if defendant had been able privately to retain and offer the testimony of a psychotherapist and drug treatment counselor. The trial court committed no equal protection violation in denying defendant's motions for appointment of experts because, regardless of indigency, the court had no need to hear about treatment options on reinstatement of probation when the interests of justice clearly required a prison commitment.

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 2009, S175731.