Filed 8/23/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C099223 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CR000938) |
| v. | |
| GREGORY ALLEN DAUTERMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Tehama County, Jonathan W. Skillman, Judge. Affirmed with directions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kimberley A. Donohue and Jessica Trieu-Simerly, Deputy Attorneys General, for Plaintiff and Respondent.

Under a negotiated agreement, defendant Gregory Allen Dauterman pled no contest to making criminal threats and admitted he previously committed a serious felony. Pursuant to this agreement, the trial court imposed and suspended an eight-year prison sentence, placing Dauterman on a two-year term of formal probation. In February 2021, the trial court clarified: "That will be two years from today's date." "The credits -- it will be [credit for time served] on the jail time. Credits are a . . . total of 228." Nearly two years later, the trial court summarily revoked probation after the probation department filed a petition in January 2023. The petition alleged that Dauterman had violated the terms of his probation by failing to contact the probation department for three consecutive months. After Dauterman admitted to the probation violation at a subsequent hearing, the trial court terminated probation and ordered him to serve the previously suspended eight-year sentence.

On appeal, Dauterman contends the trial court lacked jurisdiction to revoke probation in 2023 because his two-year probationary term had ended as a matter of law in July 2022. According to Dauterman, when the trial court imposed the two-year probation term in February 2021 and credited him with 228 days for time served, those days should have reduced the probation period to 502 days. Dauterman also contends that, even if the trial court had jurisdiction to revoke probation in 2023, it abused its discretion by terminating probation rather than reinstating it. Additionally, Dauterman claims that trial counsel provided ineffective assistance and that the abstract of judgment should be corrected. We reject Dauterman's first three claims, but agree the abstract of judgment requires correction.

BACKGROUND

Pursuant to a November 2020 negotiated resolution, Dauterman pled no contest to one count of making criminal threats (Pen. Code, § 422)[1] and admitted he previously committed a serious felony (§ 667, subd. (a)(1)) in exchange for (1) the prosecution's dismissal of other allegations of criminal conduct, (2) a suspended eight-year term in prison, and (3) a period of probation under conditions to be set by the trial court, including credit for time served in county jail.  Dauterman told the trial court he understood he faced eight years in state prison if he violated probation.

A January 2021 probation report recommended Dauterman be placed on probation "only because of the stipulated agreement."  It also recommended numerous terms and conditions of probation, including that Dauterman (1) report to probation at least once a month or as otherwise directed by a probation officer, (2) pay a conviction assessment of $30 pursuant to section 70373 of the Government Code, and (3) be confined 228 days in county jail "with credit for the time heretofore served."

In a February 16, 2021 hearing, the parties and the trial court confirmed that due to the enactment of Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950) (Stats. 2020, ch. 328, § 2), Dauterman's period of felony probation would be two years, the new statutory maximum (§ 1203.1, subd. (a)), and the time Dauterman had already spent in county jail before that day would be credit for time served.  Consistent with that discussion, the trial court placed Dauterman on formal felony probation for two years. "That will be two years from today's date," the trial court said.  The trial court continued: "The credits -- it will be [credit for time served] on the jail time.  Credits are 114 and 114 for a total of 228.  [¶]  It will be the aggravated term [of] . . . a total of eight suspended, execution suspended."

---

[1] Undesignated statutory references are to the Penal Code.

Defense counsel waived a formal reading of all the recommended terms and conditions of probation, and the trial court announced it would "adopt the remaining terms and conditions in their entirety as if read into the record and incorporated into the judgment and sentence." The trial court then spoke directly to Dauterman: "[S]o, you have eight years suspended. You have been in this situation before with respect to supervision, you know what you need to do." "Absolutely," Dauterman replied. "You most likely will be going back to state prison eight years. You know what you need do," the trial court warned. "Yeah. I don't want that," Dauterman said.

In January 2023, the probation department filed a petition to revoke Dauterman's probation, alleging he failed to contact the probation department in any manner since late September 2022. About two weeks later, after Dauterman was arrested, the trial court summarily revoked probation and ordered Dauterman released from custody on his own recognizance. In a hearing held in February 2023, Dauterman admitted the alleged probation violation and the trial court set for a later date the decision whether to reinstate or terminate Dauterman's probation. As the hearing concluded, a probation officer told Dauterman to "[r]eport to probation now." On the heels of that comment, the trial court told Dauterman to "report to probation as soon as [his] case [was] done" that day. Dauterman remained released on his own recognizance.

An April 2023 probation report noted that although Dauterman initially complied with the terms of his probation, he later struggled to follow directives, reporting to probation "only . . . sporadically or after an appointment letter" was sent to him. The report also indicated that Dauterman was sanctioned twice for failing to report as directed, but then failed to appear to complete the sanctions for those violations. He failed to contact the probation department in any manner from September 22, 2022, until his arrest on January 5, 2023.

A May 2023 probation report stated that Dauterman "failed to report to probation as directed following his court hearing" on May 1, 2023. At a hearing held on May 22,

4

2023, Dauterman asked the trial court to reinstate probation and the People asked the trial court to terminate probation and send Dauterman to prison. After hearing from counsel and indicating it had read the April and May 2023 probation reports, the trial court terminated probation and imposed the suspended eight-year prison sentence, explaining: Dauterman had absconded, and while he did report as directed after his January 2023 arrest, he did not report to probation on May 1, 2023, "which is significant." "He . . . was sanctioned two times for not reporting while he was on probation. He failed to report to do his sanction, which is also significant. [¶] If the defendant can't show up while on probation and then he can['t] show up after the violation, the Court has no indication that he will continue to comply. It looks as though he will not." The trial court lifted and imposed the execution of the suspended eight-year prison sentence and stated Dauterman was entitled to 229 days of credit. Dauterman appealed.

DISCUSSION

I

*Probationary Term and Trial Court's Jurisdiction*

Dauterman contends the trial court's January 2023 summary revocation of probation and May 2023 termination of probation must be reversed because his two-year probationary period terminated by operation of law in July 2022, at which point the trial court lost jurisdiction to revoke his probation. This is so, Dauterman contends, because when the trial court ordered him to "serve 228 days in county jail as a term of probation" (italics omitted) in February 2021, that time counted against his two years of probation, leaving him with "only . . . 502 days of his two-year term remaining." The trial court erred as a matter of law when it ordered the two-year period of probation to begin on that day in February 2021, Dauterman maintains, because this was an unauthorized probationary term of two years and 228 days.

5

A.  *Legal Background of the Merits*

The basic premise that Dauterman asserts in this appeal is that his two-year term of probation should have been reduced by the number of days he spent, and received credit for, in the local jail prior to the date he was placed on probation by the trial court. As we shall explain, this assertion lacks merit.

1.  *Standard of Review and Appellant's Burden*

We review de novo the pure questions of law presented here.  (*People v. Tua* (2018) 18 Cal.App.5th 1136, 1140.)  A trial court's judgment is ordinarily presumed to be correct, and it is the appellant's burden to demonstrate, based on the appellate record and with meaningful legal analysis supported by citations to authority, that the trial court committed reversible error.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

2.  *Probation Generally and Section 1203.1*

" '[P]robation' means the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer."  (§ 1203, subd. (a).)  Section 1203.1, subdivision (a)(2) explicitly authorizes the imposition of county jail as a condition of a grant of probation.  Effective January 1, 2021, Assembly Bill 1950 amended section 1203.1 by reducing the maximum length of probation to two years for most felonies, including making criminal threats, Dauterman's conviction here.  (*People v. Prudholme* (2023) 14 Cal.5th 961, 963, 965-966.)

3.  *Sections 19.2 and 2900.5*

In relation to a grant of probation and an accompanying condition that a defendant serve time in a local jail, there are two statutory provisions that articulate how a trial court must count and/or credit the days spent in custody after a grant of probation is ordered.  This intricate statutory scheme of custodial credits concerns time that a

6

defendant may spend in local custody going forward, not time that has already been spent incarcerated. (*People v. Arnold* (2004) 33 Cal.4th 294, 307-308.)

First, section 19.2 provides: "In no case shall any person sentenced to confinement in a county or city jail . . . as a condition of probation upon conviction of either a felony or a misdemeanor . . . be committed for a period in excess of one year." Next, section 2900.5, subdivision (a) provides in relevant part that in all felony convictions, when the defendant "has been in custody," including any time spent in a "jail . . . prison . . . or similar residential institution, all days of custody . . . shall be credited upon his or her term of imprisonment." Section 2900.5, subdivision (c) provides in relevant part that a " 'term of imprisonment' " includes "any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence." These statutory provisions do not authorize or permit the reduction of a term of probation by the time previously spent in custody as a condition of that probation.

B.    *Analysis of the Merits*

Section 1203.1, subdivision (*l*) is the only statutory authority Dauterman cites in support of his novel theory that because he had already spent 228 days in county jail before the trial court imposed his two-year term of formal probation, the trial court could not order his two-year probationary term to begin on February 16, 2021.[2] We are not

_____

[2] Dauterman cites *People v. Flores* (2022) 77 Cal.App.5th 420 for the proposition that Assembly Bill 1950 makes two-year terms of probation the maximum in all but a few situations. He cites *People v. Butler* (2022) 75 Cal.App.5th 216, review granted June 1, 2022, S273773, for the proposition that Assembly Bill 1950's retroactive effect may impact a trial court's jurisdiction to revoke probation. Neither of those propositions aid Dauterman's contention that the trial court erred by ordering a two-year probationary term beginning in February 2021.

Dauterman also cites, without any accompanying argument, a page in the January 2021 probation officer's report containing the recommendation of 228 days of confinement in

7

persuaded. The provision states in relevant part that the two-year limit on probation that Assembly Bill 1950 created does not apply to an "offense listed in subdivision (c) of Section 667.5 and an offense that includes specific probation lengths within its provisions" or "a felony conviction for paragraph (3) of subdivision (b) of Section 487, Section 503, and Section 532a, if the total value of the property taken exceeds twenty-five thousand dollars ($25,000)." (§ 1203.1, subd. (*l*)(1)-(2).) That statutory language is irrelevant to Dauterman's contention because he was not convicted of an offense exempted by Assembly Bill 1950. Further, Dauterman neither cites any authority nor can we find any legal basis, statutory or otherwise, that requires or authorizes reducing a specified term of probation by the number of days a defendant has served in custody prior to sentencing. Dauterman therefore has not carried his burden to persuade us with citations to pertinent authority that the trial court erred. (*Jameson v. Desta*, *supra*, 5 Cal.5th at pp. 608-609; see *People v. Davis* (2023) 87 Cal.App.5th 771, 777 ["defendant cites no authority, and we have discovered none in our own research, supporting his argument" regarding custody credits under § 2900.5].)[3]

county jail with credit for time served. To the extent this citation is meant to suggest that the trial court, by adopting the recommendations in the report during the February 2021 hearing, ordered that the time Dauterman spent in county jail up to that point was to be credited against the two-year probationary term, that suggestion lacks merit. (Cf. *People v. Freitas* (2009) 179 Cal.App.4th 747, 750, fn. 2 [oral pronouncement of probation controls over a conflicting document, such as a written probation order], overruled on another ground in *People v. Hall* (2017) 2 Cal.5th 494, 503, fn. 2; *In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1154-1155 [conditions of probation need not be spelled out in great detail in court so long as the defendant knows what they are].)

[3] "We are not required to . . . supply arguments for the litigants" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52) especially when "[a]s with many determinations of credit, a seemingly simple question [might] reveal hidden complexities" (*In re Marquez* (2003) 30 Cal.4th 14, 19).

8

## II

### *Termination of Probation*

Dauterman contends that even if his two-year probationary period ended on February 16, 2023, meaning the trial court had jurisdiction to summarily revoke his probation in January 2023, the trial court's decision not to reinstate probation was an abuse of discretion given the spirit of Assembly Bill 1950 and his "substantial compliance for a large portion" of the probationary term and the "minor, technical nature" of his violation. He further contends the trial court erred as a matter of law by penalizing him for not reporting to probation on May 1, 2023, as his probationary period had already expired by that point even under the People's theory. Because Dauterman did not raise these contentions in the trial court, they are forfeited on appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 882.) Nevertheless, because they present questions of law, we will exercise our discretion to address the merits of Dauterman's contentions regarding the spirit of Assembly Bill 1950 and the minor nature of his violation. (*In re Sheena K.,* at p. 887, fn. 7 [appellate courts have discretion to review forfeited claims].) By contrast, and because the appellate record is underdeveloped, we will not consider the merits of Dauterman's contention that the trial court could not consider his failure to report to probation on May 1, 2023.

A. *Legal Background*

1. *Standard of Review and Section 1203.2, Subdivision (a)*

Section 1203.2, subdivision (a) authorizes a trial court to revoke and terminate probation if the interests of justice so require and the trial court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation. The provision also provides that the revocation of probation, "summary or otherwise, shall serve to toll the running of the period of supervision." (§ 1203.2, subd. (a).) A decision to reinstate probation "requires a determination by the trial court that the interests of justice so require. [Citation.] What the interests of justice require in

9

a particular case constitutes a question uniquely addressed to the broad judicial discretion of the trial court." (*People v. Stuckey* (2009) 175 Cal.App.4th 898, 916 (*Stuckey*).)

A trial court's order should not be disturbed under the abuse of discretion standard unless it is arbitrary or capricious, applies the wrong legal standard, or is based on factual findings unsupported by substantial evidence. (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.) Under this standard, a decision should not be reversed merely because reasonable people might disagree. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

B.      *Analysis*

Here, the trial court terminated probation because it saw "no indication" Dauterman would comply with the terms and conditions of probation, noting he (1) was sanctioned twice for not reporting while he was on probation, (2) then failed to report to do his sanctions for those violations, and (3) "absconded" for multiple months in fall 2022. Reasonable jurists might disagree with the decision to terminate probation, but it was neither arbitrary nor based on legal error or insufficient evidence. There was adequate evidence to support the trial court's conclusion that Dauterman would not comply with the terms and conditions of probation based on his actions, and inactions, during the probationary period. Thus, we will not disturb the trial court's determination that the interests of justice required execution of Dauterman's suspended sentence in light of those determinations. (See *Stuckey, supra*, 175 Cal.App.4th at p. 916.)

Dauterman's contention that his probation violation was of a "minor, technical nature" misses the mark and is unpersuasive on the merits. It was not improper for the trial court to consider *more* than just the probation violation that Dauterman admitted (that he failed to contact the probation department in any manner from late September 2022 to January 2023) when deciding whether to terminate probation. The trial court was permitted to consider that while on probation Dauterman failed to report to probation and when sanctioned for those failures, he again failed to perform mandated sanctions. (*Stuckey, supra*, 175 Cal.App.4th at p. 916 ["What the interests of justice require in a

10

particular case" is a question "uniquely addressed to the broad judicial discretion of the trial court"].)

The legislative history for Assembly Bill 1950 indicates a concern about termination of probation for " ' "technical" and minor' " violations of probation akin to missing a drug rehabilitation appointment or socializing with a friend who has a criminal record. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) as amended May 6, 2020, p. 3; see *People v. Jackson* (2023) 93 Cal.App.5th 207, 216, review granted Sept. 13, 2023, S281267.) Failing to report to probation for three months in a row can be viewed as much more significant than missing a single appointment for drug addiction treatment or harmless socializing with a friend. For this reason, Dauterman's contention that the trial court's decision violated the spirit of Assembly Bill 1950 is unpersuasive. (See *People v. Paige* (2020) 51 Cal.App.5th 194, 200 [when interpreting a statute, a court's fundamental task is to ascertain the intent of the lawmakers by discerning the ordinary meaning of the words in the statute; if not ambiguous, that ordinary meaning governs].) Here, section 1203.2, subdivision (a) unambiguously authorizes a trial court to terminate probation "if . . . the court, in its judgment, has reason to believe . . . that the person has violated *any* of the conditions of their supervision." (§ 1203.2, subd. (a), italics added.)

III

*Effective Assistance of Counsel*

Dauterman contends that because he was "not actually on probation" on May 1, 2023, there was no conceivable reasonable strategy for counsel's failure to raise that issue when the trial court revoked probation after saying it was "significant" that Dauterman failed to report to probation on that date. We are not persuaded.

To demonstrate ineffective assistance, a criminal defendant must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. On direct appeal, a finding of deficient performance is warranted where (1) the record

11

affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. Where trial counsel's tactics or strategic reasons for challenged decisions do not appear on the record, the court must not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for the acts or omissions. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

Here, we discern at least two conceivable reasons why trial counsel made the decisions that he did. Perhaps counsel did not dispute the notion that Dauterman had to report to probation after February 16, 2023, so that he could remain out of custody pending the formal revocation hearing. The record reflects three post-February 16 hearings after which Dauterman was released on his own recognizance. Counsel may have been concerned that raising the issue appellate counsel raises herein would lead the trial court to keep Dauterman in custody until the formal revocation hearing in late May 2023, fearing Dauterman might not appear. Alternatively, counsel may have elected not to object to the trial court's reference to the May 1, 2023 failure to report to probation, given that the court had already referenced an adequate basis for terminating Dauterman's probation, including his months-long failure to report and other violations during the probation period. There was no prejudice to Dauterman for counsel's failure to object given the sufficiency of the evidence of the pled and admitted violations. These conceivable reasons leave us unpersuaded by Dauterman's claim of ineffective assistance of counsel.

IV

*Correction of Abstract of Judgment*

The parties agree that the abstract of judgment should be corrected. After the trial court terminated probation and imposed the suspended sentence in May 2023, it indicated it would adopt the fines and fees recommended in the May 2023 probation report as if read into the record. The trial court asked defense counsel if he "[w]aive[d] the

breakdown of fines and fees on the abstract?"  "Yes, your Honor," counsel replied.  The May 2023 probation report recommended imposition of the mandatory $30 conviction assessment pursuant to Government Code section 70373, "previously ordered on February 16, 2021."

We agree the abstract of judgment should be modified to reflect the $30 conviction assessment pursuant to Government Code section 70373, rather than a $30 assessment pursuant to Health and Safety Code section 11372.7, subdivision (a). (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting a $30 conviction assessment pursuant to Government Code section 70373, rather than to Health and Safety Code section 11372.7, subdivision (a).  In all other respects, the judgment is affirmed.  The trial court is directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


/s/
BOULWARE EURIE, J.


We concur:


/s/
KRAUSE, Acting P. J.


/s/
FEINBERG, J.

13