Filed 3/6/15  P. v. Taylor CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>RAYLON SHANE TAYLOR,<br><br>    Defendant and Appellant. | C075628<br><br>(Super. Ct. Nos. CM038741,<br>CM039032) |

Defendant Raylon Shane Taylor appeals from the trial court's orders of January 16, 2014 finding him in violation of his probation and ordering execution of his previously-imposed prison sentence.  He contends the trial court abused its discretion in refusing to reinstate his probation, arguing that his violation--which he concedes--occurred due to his unexpectedly early release from jail and resulting denial of transportation directly to a designated drug program.  He argues that his early release deprived him of the "meaningful opportunity to comply" with the requirements of probation.

1

Because we disagree that the trial court abused its broad discretion in making its orders, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The details of defendant's conduct leading to the charges for which he was sentenced are not relevant to our discussion on this appeal. It suffices to say that defendant was arrested and charged with numerous offenses, mostly drug and theft related, occurring in 2013. In case No. CM038741, defendant entered a no contest plea to possession of psilocybin (Health & Saf. Code, § 11377, subd. (a); count 1) and public intoxication, a misdemeanor (Pen. Code, § 647, subd. (f); count 2)[1] in exchange for dismissal of the remaining allegations (strike prior and prior prison term). In case No. CM039032, defendant entered a no contest plea to two counts of second degree burglary (§ 459; counts 1 & 2) and admitted an on-bail or own recognizance enhancement (§ 12022.1) in exchange for dismissal of the remaining allegations (strike prior and three prior prison terms).[2]

The probation report shows defendant has an extensive history of huffing inhalants and had failed to complete a residential treatment program on one prior occasion. In 2008, defendant had been diagnosed as inhalant dependent with an inhalant-induced psychotic disorder with auditory hallucinations. Defendant had been on parole and had numerous violations for absconding and possession and use of inhalants. The probation officer recommended a state prison commitment based on defendant's history of probation and parole violations and theft-related convictions (three felony petty thefts with priors and a robbery).

---

[1] Further undesignated statutory references are to the Penal Code.

[2] Defendant also entered a no contest plea to a misdemeanor charge (§ 148, subd. (a)(1)) in case No. SCR92341, resulting in concurrent time.

2

*Initial Sentence and Terms and Conditions of Probation*

On October 1, 2013, the trial court imposed and stayed execution of an aggregate six-year four-month term in state prison. The court granted defendant probation.

As relevant here, the terms and conditions of probation included, as orally pronounced: "Special Condition number 1, it is the Court's intention to have the defendant transported directly from Butte County Jail to his residential treatment program. . . . Probation is authorized to release the defendant directly to a representative of Salvation Army or their designee to be transported directly to the Salvation Army Residential Treatment Program in Oakland." The court added its "intention that at the earliest opportunity that [defendant] be directly transported to residential treatment." General conditions of probation included that defendant timely report to the probation officer if and when released from custody, and obey all laws.

*Probation Revocation*

On October 10, 2013--only nine days after probation was granted--defendant was released from county jail. He was not transported directly to the residential treatment program. Pursuant to the general conditions of probation, defendant was required to report to probation five days later, on October 15, 2013. Defendant failed to report. On October 30, 2013, an officer found defendant unconscious and intoxicated with a bottle of compressed air duster on his body. He was arrested for possession of a toluene substance. (§ 381.) He was also in violation of parole.

On November 14, 2013, a petition for violation of probation alleged that defendant had failed to report to probation upon his release from jail (on October 15, 2013) and on two subsequent dates in November, and that defendant had possessed controlled substances.

On December 19, 2013, defendant admitted that he failed to report to probation on October 15, 2013, and the remaining allegations were dismissed with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754. In a supplemental report, the probation officer

3

again recommended state prison, noting that defendant had *never* reported to probation. The report also noted that defendant had not reported to Tehama County parole supervision since 2008, and that defendant "admitted he did not take his grant of probation seriously, and further assumed that his failure to report would be pardoned." Although defendant was cooperative during the probation interview, he "has had multiple chances on prior grants of probation and parole, and he sustained numerous documented violations. [He] has never reported to the probation department or to parole supervision. Hence, his performance is deemed unsatisfactory."

Defendant was sentenced on January 16, 2014. He submitted a letter explaining his reasons for failing to report, including that: "I was released to the streets and [b]ecause I am homeless I became distracted with trying to find food and shelter and could not find a ride to the probation department." The prosecutor pointed out that defendant had failed to even *call* the probation officer and ask for help, or stop in at a local center and ask for help getting to the drug treatment program upon his unexpectedly early release from jail. Instead, he did nothing. Defense counsel argued that defendant was unable to succeed without transport as had been arranged and expected, and that he should be given another chance.

The court refused to reinstate probation, commenting in relevant part as follows:

"I was the original sentencing judge. I recall this case. The Court was presented initially with the upper term state prison recommendation. I asked for additional terms and conditions so we could give him an opportunity on probation. We gave him a shot. I imposed a state prison commitment and suspended execution of that holding that time over your head knowing that if there was a problem that you would go straight to prison. And to now say well, I was just released out of custody and I'm not to blame because I didn't go into treatment after Probation made and Counsel made incredible efforts to convince the Court that you could be treated in Salvation Army really is not very heartening to this Court."

4

The court denied reinstatement on probation and ordered execution of the previously imposed state prison sentence. Defendant filed a timely notice of appeal.

## DISCUSSION

As we have described *ante*, the trial court first revoked defendant's probation and then made the decision not to reinstate it, but instead to order execution of the prison sentence previously imposed. Defendant does not contest the *revocation* of probation, arguing instead that the failure to *reinstate* probation was the error. He contends that reinstatement "was necessary to implement the goal of the agreement," which he couches as defendant's expected attendance of the drug treatment program pursuant to his plea. We are not persuaded.

First, defendant's probation violation allegations were not based on his failure to attend the program; as described *ante*, three of the four charged violations were that he failed to comply with even the most basic of the general conditions--that he report to his probation officer following his release from custody, whether that release be routine or unexpected. The fourth violation was based on his failure to obey all laws. As the probation officer noted, defendant had a history of violating grants of probation and parole, and had *never* reported to the probation department or to parole supervision since his release. Thus, although we agree with defendant that one of the trial court's goals in granting defendant probation was to give him a chance to complete the drug program, it was not his lack of completion of the drug program that resulted in his violation. It was his lack of any attempt whatsoever to comply with the most basic requirements of probation and parole, i.e., that he stay in touch with his probation officer and obey the law while doing so, that led to his violation.

Second, in our review of this record we cannot say that the trial court failed to consider the circumstances surrounding defendant's violation of probation in reaching its decision to execute his prison sentence after revoking his probation. Rather, the court exercised its discretion in accordance with its factual findings and observations.

5

"We review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.' [Citations.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.)

"When the initial sentencing court imposes a state prison sentence but stays execution of the sentencing pending completion of probation, on a subsequent violation of probation the court does not have discretion to change the previously indicated sentence. [Citation.] The court does have discretion to reinstate probation. [Citation.] Reinstatement of probation, however, requires a determination by the trial court that the interests of justice so require. [Citation.] What the interests of justice require in a particular case constitutes a question uniquely addressed to the broad judicial discretion of the trial court." (*People v. Stuckey* (2009) 175 Cal.App.4th 898, 916; see *People v. Medina* (2001) 89 Cal.App.4th 318, 321-322.)

Given the high degree of deference that we are required to give the trial court's decision-making regarding probation revocation and reinstatement, we cannot say the trial court's decision in this case reflects an abuse of discretion. Although we agree that the record reflects that the trial court had intended that defendant be released directly to the Salvation Army, the court's subsequent decision not to reinstate defendant on probation--where defendant was released early and failed to do *anything* to address the problems caused for him by his unexpectedly early release--was neither arbitrary nor irrational.

The trial court considered the fact that, contrary to expectations, defendant had not been released directly into a relatively secure environment. However, it also considered that defendant was experienced in the criminal justice system, and he admitted he downplayed his duty to follow the terms of his probation. Defendant took no reasonable

6

steps to help himself when a glitch arose in the plan, and he did not even try to comply with a single probation condition.

As stated in another sentencing context, "Whatever conclusions other reasonable minds might draw, on balance we find the decision tolerable given the court's broad latitude." (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 981.) We cannot say the totality of the circumstances here compelled reinstatement of probation, but instead left the matter within the trial court's broad discretion.

## DISPOSITION

The judgment is affirmed.


        DUARTE        , J.


We concur:


      HULL       , Acting P. J.


      MAURO      , J.