Filed 2/1/21  P. v. Vincent CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B305401 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA465995) |
| v. | |
| CHRISTOPHER VINCENT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Douglas Sortino, Judge.  Affirmed.

Christopher J. Bou Saeed, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Christopher Vincent appeals the trial court's order terminating his probation and ordering execution of his suspended seven-year state prison sentence for assault with a deadly weapon with an enhancement for infliction of great bodily injury. The trial court imposed the seven-year sentence after finding Vincent had violated his probation by driving on a suspended license, committing a hit and run, and brandishing a knife at the driver of the other car. On appeal, Vincent contends the court abused its discretion by imposing the suspended sentence for misdemeanor conduct that did not result in any physical injuries or threaten the safety of the community. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Underlying Offense and Probationary Disposition*

A security guard at a liquor store attempted to stop a physical altercation between Vincent and another man. Vincent responded by stabbing the security guard with a knife. The information charged Vincent with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and specially alleged that in the commission of the offense Vincent personally inflicted great bodily injury (§ 12022.7, subd. (a)). The information also alleged Vincent had suffered two prior convictions of serious or violent felonies under the three strikes law (§§ 667, subds. (b)-(j), 1170.12) and one prior serious felony conviction within the meaning of section 667, subd. (a)(1), and he had served five prior prison terms (§ 667.5, subd. (b)).

At a pretrial conference on March 6, 2019, the prosecutor indicated there was a negotiated disposition of a seven-year

2

sentence with five years of probation and performance of 30 days of CalTrans work if Vincent changed his plea. The trial court expressed its surprise that the People had proposed a probationary disposition on a third strike case, stating it was "flabbergasted" by the proposed disposition. The prosecutor responded he had offered a probationary disposition because there could be proof problems in a jury trial. Vincent pleaded no contest to one count of assault with a deadly weapon and admitted the great bodily injury enhancement allegation. The trial court found a factual basis for the plea and found Vincent's waivers were voluntary, knowing, and intelligent. Pursuant to the negotiated plea, the trial court sentenced Vincent to seven years in state prison, comprised of the upper term of four years for assault with a deadly weapon plus three years for the great bodily injury enhancement. The court suspended execution of the sentence and placed Vincent on five years' formal probation on condition Vincent complete 30 days of CalTrans work. The terms of Vincent's probation required him to obey all laws and prohibited him from owning, using, or possessing any dangerous or deadly weapons, including firearms, knives, or other concealable weapons.

The trial court warned Vincent if he violated his probation in any manner, no matter how minor, the court would terminate his probation and sentence him to seven years in state prison. The court gave several examples of what would constitute a probation violation, including failing to complete his 30 days of CalTrans service or getting "caught stealing something . . . I don't care how small it is, it's seven years." The court repeated its warning "to make sure you are completely understanding what the consequences of any violation would be in this case,"

reiterating "[i]f you violate any of the terms and conditions of your probation, no matter how slight, I will remand you forthwith, set a violation hearing, and if I find you in violation you will get the seven years in state prison." Vincent responded he understood.

B.    *The Probation Violation and Probation Violation Hearing*

On August 17, 2019 Vincent was involved in a car accident, in which he allegedly hit another car, brandished a knife at the other driver, and left the scene of the accident. Vincent was charged with misdemeanor hit and run (Veh. Code, § 20002) and brandishing a knife (Pen. Code, § 417, subd. (a)(1)). At trial, the jury could not reach a verdict, and the court dismissed the case.[1]

On September 19, 2019 the trial court[2] revoked Vincent's probation. Two witnesses testified at the February 14, 2020 probation violation hearing. Christopher Schmid was driving southbound on Atlantic Boulevard in Long Beach when a black sedan tried to pass him to the left in the turning lane. When the black sedan approached the median on the left, it slammed on its brakes, pulled behind Schmid's vehicle, and rear-ended Schmid. The black sedan moved to the lane to the right of Schmid's vehicle, slowed down slightly, then accelerated. Schmid followed the black sedan, and eventually both vehicles pulled over. At the hearing, Schmid identified Vincent as the driver of the black

---

[1]    According to Vincent's counsel, the principal issue at trial was the identity of the perpetrator. The record does not reflect which judicial officer presided over the trial.

[2]    Judge Douglas Sortino initially sentenced Vincent and presided over the probation violation hearing.

4

sedan.[3] Schmid's bumper had been pushed in, and the rear hatch of the vehicle would not open. Vincent's vehicle was also damaged.

Schmid asked what Vincent was going to do. Vincent responded that "it's not that bad" and "[w]e're going to take care of it." Schmid inquired whether that meant Vincent was going to pay for the damage. At that point Vincent started fidgeting around in his pocket, and he pulled out a knife. The knife was approximately five inches long, with a fixed blade and a black handle. Vincent was physically "[v]ery close to" Schmid, and Vincent repeated, "I'm going to take care of it . . . ." Schmid asked as to the knife, "What are you going to do with that[?]" and stepped back. Schmid also told Vincent he was going to call the police. At that point Vincent got back in his car and drove off. Schmid took a photograph of Vincent's license plate and called the police. The interaction lasted fewer than two minutes.

Long Beach Police Officer Jordan Lasch responded to the gas station where Schmid had called the police. Officer Lasch observed minor damage to the rear of Schmid's car. Officer Lasch was notified the black sedan had been located, and he drove to the location where a black sedan was parked in the driveway. He observed damage on the front right quarter panel of the vehicle.

---

[3] Schmid also identified Vincent on the day of the accident. Approximately one hour after reporting the incident, the police asked Schmid to drive to a location where Vincent was handcuffed and standing near a police vehicle and police officers. Schmid identified Vincent from approximately 15 feet away. At the time of Schmid's identification at the field showup, Vincent was wearing clothes different from what he was wearing when he and Schmid had their confrontation following the accident.

5

Vincent was sitting in another vehicle one house down from where the black sedan was parked. The black sedan was not registered to Vincent, and the knife used in the incident was never recovered.

The People offered into evidence and the trial court admitted Vincent's certified records showing he had multiple prior convictions of crimes of violence and weapons possession. Also, according to records from the Department of Motor Vehicles, at the time of the accident Vincent's driver's license had been suspended due to three prior convictions for driving under the influence.

After hearing oral argument, the trial court found Schmid was credible and had sufficient time in which to identify Vincent as the perpetrator. The court found by a preponderance of the evidence that Vincent violated his probation by driving with a suspended license, being in possession of a deadly or dangerous weapon, brandishing a knife, and committing a hit and run. The court acknowledged the violations constituted misdemeanor conduct, but it concluded Vincent posed "a threat to the safety of the community" in light of his brandishing a knife at the scene of the accident, the fact the underlying offense involved stabbing of the victim with a knife, and Vincent's prior convictions of crimes involving violence.[4] The court imposed the seven-year sentence it had previously suspended.

Vincent timely appealed.

---

[4]     Vincent suffered prior convictions of assault with a firearm in 1998 (Pen. Code, § 245, subd. (a)(2)) and being a felon in possession of a firearm in 2001 (former § 12021, subd. (a)(1)), as well as a juvenile adjudication in 1994 for assault with a deadly weapon (§ 245, subd. (a)(1)).

6

## DISCUSSION

A.  *Governing Law and Standard of Review*

"At any time during the period of supervision of a person . . . released on probation under the care of a probation officer . . . the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of their supervision . . . ." (Pen. Code, § 1203.2, subd. (a); accord, *People v. Leiva* (2013) 56 Cal.4th 498, 505.)  Once probation is summarily revoked, the defendant is entitled to a formal probation revocation hearing.  (*Leiva*, at p. 505; see § 1203.2, subd. (b)(1).)  The People must prove a violation by a preponderance of the evidence.  (*People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1197 (*Shepherd*); *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066 (*O'Connell*).)

If the trial court revokes and terminates probation in a case where judgment was pronounced and its execution suspended, "the court may revoke the suspension and order that the judgment shall be in full force and effect."  (Pen. Code, § 1203.2, subd. (c).)  This provision "gives the court discretion, on revocation and termination of probation, either (1) to revoke the suspension of sentence and commit the probationer to prison for the term prescribed in the suspended sentence, or (2) to decline to revoke the suspension or to order confinement."  (*People v. Howard* (1997) 16 Cal.4th 1081, 1094, italics omitted.)  However, "the court does not have discretion to change the previously

indicated sentence." (*People v. Stuckey* (2009) 175 Cal.App.4th 898, 916.)

We review a trial court's decision to revoke and terminate probation for an abuse of discretion. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 [trial courts have "very broad discretion in determining whether a probationer has violated probation"].) We likewise review for an abuse of discretion the trial court's decision whether to revoke suspension of sentence and sentence the probationer to prison or to reinstate probation. (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421; *People v. Downey* (2000) 82 Cal.App.4th 899, 909.)

"'To establish an abuse of discretion, defendants must demonstrate that the trial court's decision was so erroneous that it "falls outside the bounds of reason."'" (*People v. Miracle* (2018) 6 Cal.5th 318, 346; see *People v. Urke* (2011) 197 Cal.App.4th 766, 773 ["'"[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . ."'"].) "'An abuse of discretion will be "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'"'" (*Miracle*, at pp. 346-347.)

B.    *The Trial Court Did Not Abuse Its Discretion in Terminating Probation and Imposing the Suspended Seven-year Sentence*

Vincent does not dispute that he violated the terms of his probation. Vincent's only contention on appeal is that termination of his probation and imposition of his suspended seven-year sentence was "unduly punitive." (Boldface omitted.)

Vincent argues the trial court abused its discretion by limiting itself to a "binary choice of seven[ ]years['] imprisonment or reinstatement of probation," without considering any alternatives that could have addressed the court's concern about the threat Vincent posed to public safety. Vincent suggests, for example, that because this was Vincent's first probation violation and he was otherwise in compliance with the terms of his probation, the trial court could have reinstated probation and imposed significant county jail time and completion of anger management classes. Vincent's contention lacks merit.

Although Vincent insists the court failed to consider any alternatives to imposing the suspended seven-year sentence, the record demonstrates otherwise. At the probation violation hearing, Vincent's counsel proposed an alternative disposition similar to the one Vincent suggests on appeal—including service of one year in county jail and waiver of his sentencing credits, with the seven-year sentence remaining suspended. The court considered and rejected this proposal in light of the violation involving "violence with a weapon." Vincent has not met his burden of establishing "'the trial court's decision was so erroneous that it "falls outside the bounds of reason."'" (*People v. Miracle, supra,* 6 Cal.5th at p. 346.) The court's factual findings that Vincent possessed a deadly or dangerous weapon, brandished a knife at the scene of a car accident, and had a history of possession and using deadly weapons—none of which Vincent disputes on appeal—amply support the court's sentencing decision. Vincent argues the court should not have relied on his other weapons-related offenses because they were remote in time. But even absent his criminal history, the court found troubling that Vincent displayed a knife after the car

accident because the underlying conviction for which he was on probation involved an assault with a knife. The apparent readiness with which Vincent displayed a weapon in response to a minor fender bender led the court to conclude Vincent posed a threat to public safety. At the original sentencing hearing, the court repeatedly admonished Vincent that even a minor probation violation would result in Vincent having to serve his full suspended sentence. Under these circumstances, the court did not abuse its discretion in imposing Vincent's suspended seven-year state prison sentence.

## DISPOSITION

The order is affirmed.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

10