Filed 8/2/23  P. v. Augustus CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096180 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F07475) |
| v. | |
| ANTHONY AUGUSTUS, | |
| Defendant and Appellant. | |

SUMMARY OF THE APPEAL

Defendant Anthony Augustus is serving a 19-year determinate sentence, comprised of nine years for an attempted murder conviction (Pen. Code, §§ 664 & 187, subd. (a); statutory section citations that follow are found in the Penal Code unless

1

otherwise stated) and a 10-year enhancement for the personal use of a firearm (§ 12022.53, subd. (b)). He was 17 when he committed the crime, and he was sentenced in January 2015. Under section 3051, subdivision (b)(1), defendant will be eligible for "release on parole at a youth offender parole hearing during [his] 15th year of incarceration."

Following defendant's conviction, our Supreme Court in *People v. Franklin* (2016) 63 Cal.4th 261, 283 (*Franklin*), articulated the types of information a defendant ought to be given the opportunity to gather at or near a sentencing hearing to enable a future panel of the Board of Parole Hearings (Board) to meaningfully assess the "subsequent growth and increased maturity of the prisoner" as contemplated by the statutes governing youth offender parole hearings (see § 4801, subd. (c)). In *In re Cook* (2019) 7 Cal.5th 439, 458-459 (*Cook*), our Supreme Court articulated a procedure through which a sentenced prisoner with an otherwise final conviction might seek a *Franklin* hearing to preserve evidence for a future youth offender parole hearing.

Defendant sought and was granted a *Franklin* hearing using the procedures outlined in *Cook*. Defendant then made an ex parte request for funds to pay an expert psychiatrist to prepare an evaluation of him in anticipation of the *Franklin* hearing. The court denied this request on the grounds that (1) defendant had not provided statutory authority to demonstrate the court was required to order the provision of public funds to cover the fees of experts in a *Franklin* proceeding; and (2) defendant failed to provide support for his argument that the United States Constitution's Sixth Amendment right-to-counsel protections required the court order funding for the expert.

On appeal, defendant makes two arguments. First, he argues the trial court committed an error of law when it concluded that defendant did not have a statutory right to funding for expert services to perform a psychological evaluation during the *Franklin* proceedings. Second, he argues the trial court's denial of his request deprived him of effective assistance of counsel under the Sixth Amendment to the United States

Constitution and the California Constitution.  We are not persuaded by either argument and we affirm the trial court's decision.

## FACTS AND HISTORY OF THE PROCEEDINGS

### The Underlying Conviction

Because defendant does not present an error in his underlying conviction, we do not recite the circumstances that led to that conviction.  (See *People v. Stuckey* (2009) 175 Cal.App.4th 898, 905.)

On November 13, 2014, pursuant to a plea, the Sacramento Superior Court convicted defendant Anthony Augustus of attempted murder under sections 664 and 187, subdivision (a), and of a being a person in possession of a firearm who was prohibited from possessing a firearm, as contemplated by section 29815.  With respect to the attempted murder charge, pursuant to the plea, the court found true the enhancement allegation that in committing the crime defendant personally used a firearm as described in section 12022.53, subdivision (b), and that defendant committed the crime for the benefit of, at the direction of, or in association with a criminal street gang as described in section 186.22, subdivision (b)(1).  Defendant was 17 years old when he attempted to murder his victim.

On January 8, 2015, the trial court sentenced defendant to a determinate term of nine years on the attempted murder conviction and to an additional determinate term of 10 years for the firearm use enhancement.  The trial court stayed all other sentences.  Thus, defendant's total sentence was a determinate term of 19 years.  The court allowed defendant 485 days credit for time served and good behavior as of January 8, 2015.

### *Franklin* Proceedings

On April 26, 2021, defendant filed a petition for a hearing under section 1203.01 and *Franklin* and *Cook*.  Defendant requested the hearing in order to make a record and preserve evidence for his use at a youth offender parole hearing as contemplated by

section 3051. In the memorandum filed in support of his request, defendant noted he would be seeking the appointment of an expert to review records and perform a formal evaluation of him. The trial court granted defendant's request for a *Franklin* hearing.

Prior to the requested *Franklin* hearing, defendant filed an ex parte application seeking $7,500 in funds to retain Dr. Rahn Y. Minagawa to act as an expert witness on defendant's behalf. According to the memorandum defendant filed in support of the application, Dr. Minagawa is a forensic psychiatrist with expertise in adolescent development. Defendant wished to have Dr. Minagawa meet with and psychologically evaluate him, and he anticipated the evaluation could then be included in the record developed at the *Franklin* hearing.

In his memorandum supporting his request for funding, defendant quoted *Franklin*, *supra*, 63 Cal.4th at page 284 for the proposition that, "section 3051, subdivision (f)(1) provides that any psychological evaluations and risk assessment instruments used by the Board in assessing growth and maturity shall take into consideration . . . any subsequent growth and increased maturity of the individual. Consideration of 'subsequent growth and increased maturity' implies the availability of information about the offender when he was a juvenile."

Defendant took the position that (1) this meant he has the right to present documentation regarding his maturity at the time of the offense, including psychological evaluations and risk assessments; and (2) in turn, the right to present such evaluations included the right to obtain those evaluations if they did not already exist. Defendant, who asserted he was indigent, argued his right to funds to pay for Dr. Minagawa's expert services was part of his right to counsel as contemplated by the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution.

The trial court denied defendant's application for funds for Dr. Minagawa's services. In its analysis, the court first noted that defendant had argued that section 3051 and *Franklin* give him the right to present psychological evaluations, and that his Sixth

4

Amendment right to counsel includes the right to necessary support and investigative services.

Next, the trial court agreed that cases cited by defendant were applicable to its consideration of the application. For example, the trial court noted case law explains that *Franklin* hearings give defendants an opportunity to present youth-related mitigating factors; that the role of the trial court in *Franklin* hearings is to provide judicial oversight in gathering evidence that will be used at a later date; and that though "youthful offenders have a constitutional right to parole consideration," the right to a *Franklin* hearing before the trial court was created by statute. (*People v. Sepulveda* (2020) 47 Cal.App.5th 291, 300 (*Sepulveda*); *People v. Lipptrapp* (2021) 59 Cal.Ap.5th 886, 896 (*Lipptrapp*).)

The trial court agreed that defendants have the right to "present psychological evaluations and risk assessments at a *Franklin* hearing." "However," it found, "the defendant's right to present those evaluations does not compel the Court to provide funding to obtain them. *Sepulveda* and *Lipptrapp* make it clear that the Court's primary function at a *Franklin* hearing is to act as forum for the defendant to present evidence he believes will benefit the parole board in the future. Penal Code section 3051, subdivision (f)(1) does not undermine this conclusion. The subdivision states, '[i]n assessing growth and maturity, psychological evaluations and risk assessments instruments, *if used by the board, shall be administered by licensed psychologists employed by the board . . . .*' The subdivision clearly refers to the board's ability to utilize psychological evaluations when making its parole determinations. It says nothing about commanding the courts to provide expert witnesses at a *Franklin* hearing, much less an expert *not* 'employed by the board.' Likewise, the case law cited by defendant does not compel appointment of an expert. Those cases are related to constitutional trial rights rather than the statutory right to an evidence gathering hearing."

The trial court held a *Franklin* hearing on April 15, 2022. The court approved a packet of material that was filed by the defendant without objection by the People and

had it referred to the prison.  The packet does not contain a psychological assessment prepared by an expert.

Defendant filed a notice of appeal on April 21, 2022.

DISCUSSION

I

*The Nature of Franklin Proceedings*

In *Graham v. Florida* (2010) 560 U.S. 48, 82, the United States Supreme Court held the Eighth Amendment to the United States Constitution, "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." Approximately two years later, in *Miller v. Alabama* (2012) 567 U.S. 460, 465, the United States Supreme Court found that a mandatory life without parole sentence for persons under the age of 18 at the time they committed homicide also violates the Eighth Amendment's "prohibition on 'cruel and unusual punishments.' "  In *People v. Caballero* (2012) 55 Cal.4th 262, 268, our Supreme Court applied *Graham* to hold that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Although proper authorities may later determine that youths should remain incarcerated for their natural lives, the state may not deprive them at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future."

In response these decisions, the Legislature passed Senate Bill No. 260 (2013-2014 Reg. Sess.) (Senate Bill No. 260), which became effective January 1, 2014, and added sections 3051, 3046, subdivision (c), and 4801, subdivision (c), to the Penal Code. (See Stats. 2013, ch. 312, §§ 1, 3, 4, & 5; *Franklin*, *supra*, 63 Cal.4th at pp. 268 & 276-277; *People v. Tran* (2018) 20 Cal.App.5th 561, 568.)  Under section 3051, with certain exceptions not at issue here (see subd. (h)), persons convicted of a controlling offense—

6

defined in subdivision (a)(2)(B) to mean "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment"—prior to the age of 18 would become eligible for a youth offender parole hearing in their 15th, 20th, or 25th year of incarceration, depending on the nature of the sentence for the controlling offense. (See Stats. 2013, ch. 312, § 4.)  In enacting Senate Bill No. 260, the Legislature recognized "that youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society."  (Stats. 2013, ch. 312, § 1.)  It states, "[t]he purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity . . . .  It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established."

Accordingly, section 3051 "establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile offender has 'rehabilitated and gained maturity' (Stats. 2013, ch. 312, § 1) so that he or she may have 'a meaningful opportunity to obtain release' (§ 3051, subd. (e))."  (*Franklin*, *supra*, 63 Cal.4th at p. 278.)  As relevant here, under the statute "[a] person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a determinate sentence," like defendant, "shall be eligible for release on parole at a youth offender parole hearing during the person's 15th year of incarceration." (§ 3051, subd. (b)(1).)

When considering the juvenile offender's eligibility for parole, the Board, "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."  (§ 4801, subd. (c).)  Section 3051,

7

subdivision (f)(1), dictates that, "[i]n assessing growth and maturity, psychological evaluations and risk assessment instruments, if used by the board, shall be administered by licensed psychologists employed by the board and shall take into consideration the diminished culpability of youth as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." Section 3051, subdivision (f)(2), allows "[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime or the individual's growth and maturity since the time of the crime" to "submit statements for review by the board."

In *Franklin*, *supra*, 63 Cal.4th at page 268, a juvenile offender sentenced to two consecutive 25-year-to-life sentences before the enactment of Senate Bill No. 260 challenged his sentence on Eighth Amendment grounds. Our Supreme Court determined that that passage of Senate Bill No. 260 mooted his claims. (*Ibid.*) However, even though "the Supreme Court in *Franklin* held that the juvenile offender 'need not be resentenced,' it remanded 'the matter to the trial court for a determination of whether [the juvenile] was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing.' (*Franklin*, *supra*, 63 Cal.4th at p. 284.)" (*People v. Jones* (2017) 7 Cal.App.5th 787, 818 (*Jones*).) The Supreme Court stated that "if the trial court determines that Franklin did not have sufficient opportunity, then the court may receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. Franklin may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors. The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile

8

offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law' (*Graham*[ *v. Florida*], *supra*, 560 U.S. at p. 79)." (*Franklin, supra*, 63 Cal.4th at p. 284.)[1]

The Supreme Court explained the import of remanding the matter to ensure the defendant had been provided an appropriate evidence-gathering hearing in anticipation of a parole hearing that would not occur for many years: "In directing the Board to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner' (§ 4801, subd. (c)), the statutes also contemplate that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration. For example, section 3051, subdivision (f)(2) provides that '[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime . . . may submit statements for review by the board.' Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away. (*Ibid.*)

---

[1] Rule 4.437 allows parties to submit statements in aggravation or mitigation prior to a sentencing hearing when a statute specifies three possible terms. (See also § 1170, subd. (b)(4).) Section 1204 contemplates the admissions of statements in mitigation and aggravation of punishment will be provided in open court before the court imposes a sentence. That is, *Franklin* describes proceedings for a defendant whose case is not "final"/has not yet been exhausted on appeal, and cobbles together the mechanism and authority for the remand hearing from a statute and a rule that dealt with hearings related to sentencing.

In addition, section 3051, subdivision (f)(1) provides that any 'psychological evaluations and risk assessment instruments' used by the Board in assessing growth and maturity 'shall take into consideration . . . any subsequent growth and increased maturity of the individual.' Consideration of 'subsequent growth and increased maturity' implies the availability of information about the offender when he was a juvenile. (*Ibid.*)" (*Franklin*, *supra*, 63 Cal.4th at pp. 283-284; accord *Jones*, *supra*, 7 Cal.App.5th at p. 819.)

In *Cook*, *supra*, 7 Cal.5th at pages 446-447, 451 our Supreme Court considered how a sentenced prisoner with an otherwise final conviction might seek to preserve evidence for a future juvenile offender parole hearing. It found, "[f]or inmates . . . who seek to preserve evidence following a final judgment, the proper avenue is to file a motion in superior court under the original caption and case number, citing the authority of section 1203.01 and today's decision. The motion should establish the inmate's entitlement to a youth offender parole hearing and indicate when such hearing is anticipated to take place, or if one or more hearings have already occurred. The structure for the proceeding is outlined in *Franklin*, *supra*, 63 Cal.4th at page 284, and further informed by the youth-related factors set forth in section 4801, subdivision (c). The proceeding is not limited to the filing of statements referenced in section 1203.01. Rather, consistent with *Franklin* and the court's inherent authority, the offender shall have the opportunity to 'place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors.' (*Franklin*, at p. 284.)" (*Id.* at pp. 458-459.)

The *Cook* court also articulated the authority a trial court would possess at the evidence-gathering hearing: "[a]lthough *Franklin* mandates an opportunity for evidence preservation, the trial court may 'exercise its discretion to conduct this process

efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations.' ([*People v. ]Rodriguez*[] 4 Cal.5th [1123 ]at p. 1132.)" (*Id.* at p. 459.) Thus, "*Cook* confirmed that the manner and extent of a *Franklin* hearing is left to the discretion of the trial court. (*Cook*, *supra*, 7 Cal.5th at p. 459.) . . . [I]n deciding whether the trial court has abused its discretion we are required to 'ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious. [Citation.] . . . [W]hen a trial court's decision rests on an error of law, that decision is an abuse of discretion.' (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 746 [].)" (*People v. Benzler* (2021) 72 Cal.App.5th 743, 749.)

## II

### *Section 3051, Subdivision (f)(1)*

In his first argument, defendant claims the trial court committed a legal error when it denied his request for funds to pay an expert and, therefore, we must reverse the trial court's ruling on the grounds that it was an abuse of discretion. A central problem with defendant's argument is that it relies on an incorrect reading of the trial court's reasoning in its denial of the request.

Defendant states, "[i]n finding that defendants such as appellant are barred from receiving public funding to assist them in retaining a psychological expert to supplement the record for his future youth offender parole hearing, the court determined that any report that might be prepared by a licensed psychologist on appellant's behalf was precluded by statute because section 3051, subdivision (f)(1) requires that the Parole Board only consider such evaluations prepared by 'a licensed psychologist employed by the Board.['] " He then refutes this purported finding by arguing, "[c]ontrary to the trial court's ruling, section 3051, subdivision (f)(1) does not preclude defendants from

employing private professionals to prepare reports for purposes of supplementing the record at *Franklin* proceedings."

Later, defendant writes, "[t]he *Franklin* court's specific mention of a defendant's right to supplement the record with 'evaluations' should dispel any doubt that a defendant m[a]y indeed supplement the record with a report prepared by a privately employed psychologist."  Finally, defendant states, "in denying appellant's request for funds to supplement the record at the *Franklin* proceeding, the trial court committed an error of law, believing that a report by a psychologist not employed by the parole board could not be considered by the board.  [¶] ([Record citation.)]  Because the trial court misunderstood the purpose of the *Franklin* proceedings and misconstrued section 3051 as precluding consideration of the reports and evaluation the defense sought to gather, fairness dictates the matter be remanded for further proceedings."

Defendant continued with this characterization of the trial court's reasoning in his reply, when he argued, "[t]he trial court misinterpreted Penal Code section 3051, subdivision (f).  Section 3051[, subdivision ](f) does not limit the evidence that can be put on the record in a *Franklin* proceeding."

The portion of the record defendant cites to support his representation that the trial court concluded that section 3051, subdivision (f), limits the evaluations that can be considered by the Board to those performed by board psychologists does not make this conclusion.  In referencing section 3051, subdivision (f)(1), the trial court found the statute did not support defendant's position that the trial court needed to issue an order that provided the funds to retain an expert psychologist.  That's it.  The court does not say that pursuant to section 3051, subdivision (f)(1), the only evaluations that can be placed in a *Franklin* packet for use by the Board and its staff at a future youth offender parole hearing are those prepared by board employees.  It does not say a private psychologist cannot testify or submit evaluations at a *Franklin* hearing.  Rather, the trial court says section 3051, subdivision (f)(1), which was cited by defendant in his request for funding

12

to pay an expert, only refers to how the board will use evaluations of its own employees to assess growth and maturity at the time of the juvenile offender parole hearing, and, thus, the section 3051, subdivision (f)(1), does not support a conclusion that courts must provide funding for privately retained experts in a *Franklin* hearing.

In short, the legal error defendant claims the court made does not exist because the court did not interpret the statute the way he claims it did. Indeed, the court acknowledged that defendants have a right to "present psychological evaluations and risk assessments at a *Franklin* hearing." For this reason alone, defendant's argument fails. The record does not reflect that the trial court made the legal conclusion defendant claims was made in error. (See Cal. Rules of Court, rules 8.204(a)(1)(C) [parties must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"] & 8.360 [applying rule 8.204 to criminal appeals].)

Moreover, defendant, by centering his argument on a false premise, has failed to make an argument that the trial court's actual reading of the statute was incorrect. Defendant was obligated on appeal to support his points with arguments and, if possible, by citation to authority that supports his argument. (Cal. Rules of Court, rule 8.204(a)(1)(B); see also Cal. Rules of Court, rule 8.360 [applying rule 8.204 to criminal appeals].) The defendant having failed to make an argument regarding the trial court's actual conclusion, we will not make it for him. (See *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["This court is not inclined to act as counsel . . . for . . . any appellant and furnish a legal argument"].)

III

*Sixth Amendment Right to Counsel*

In his second argument, defendant asserts that he was denied the right to effective counsel as guaranteed under the Sixth Amendment of the United States Constitution and

13

"California Constitutional grounds" when the trial court denied his request for funds to pay a forensic psychologist. This argument is unpersuasive.

As a preliminary matter, we note that defendant has not articulated which portions of the California Constitution contain the protections of which he asserts the trial court ran afoul. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' (9 Witkin, Cal. Procedure, (3d ed. 1985) Appeal, § 479, p. 469; see also *People v. Ashmus* (1991) 54 Cal. 3d 932, 985, fn. 15 []; *Duncan v. Ramish* (1904) 142 Cal. 686, 689-690 [].)" (*People v. Stanley* (1995) 10 Cal.4th 764, 793; accord *Bettencourt v. City and County of San Francisco* (2007) 146 Cal.App.4th 1090, 1102.) Because defendant has not cited to any specific provisions of the California Constitution he believes provide him the right to funds for an expert in *Franklin* proceedings, we pass on consideration on his argument that the California Constitution requires courts to provide funds for experts in *Franklin* proceedings.

Under the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . and to have the assistance of counsel for his defense." "To meet the constitutional standard the defendant must be provided effective legal assistance in the *preparation and trial of the case*. [Citations.] If a criminal defendant is unable to employ private counsel the court must appoint an attorney to represent him. [Citation.] The right to effective counsel also includes the right to ancillary services necessary *in the preparation of a defense*. [Citations.]" (*Keenan v. Superior Court* (1982) 31 Cal.3d 424, 428, italics added; see also *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 319 (*Corenevsky*).)

"Even though the right to effective assistance of counsel encompasses entitlement to defense experts, the rights are not coterminous. The California Supreme Court has explained that there is a right to an expert when necessary to respond to the prosecution's expert witnesses, or to establish an affirmative defense. (*Corenevsky*, *supra*, 36 Cal.3d at

14

p. 320 [recognizing that requests for experts usually occur prior to the commencement of trial when a defendant is still preparing a defense].)" (*People v. Stuckey, supra,* 175 Cal.App.4th at p. 918.)  In some instances, this right has been interpreted to include the use of experts at the penalty phase in capital cases.  (See *ibid.* [noting cases cited by the defendant related to cases where the penalty phase admits and might require expert testimony].)  In *Ake v. Oklahoma* (1985) 470 U.S. 68, 77, the U.S. Supreme Court noted that with respect to this right, when viewed through the lens of the due process clause of the Fourteenth Amendment to the United States Constitution, the Court "has often reaffirmed that fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system,' [citation.]  To implement this principle, we have focused on identifying the 'basic tools of *an adequate defense or appeal*,' *Britt v. North Carolina*, 404 U.S. 226, 227 (1971) . . . ."  (Italics added.)

Yet *Franklin* proceedings are not trials or appeals, and they are unrelated to the validity of a defendant's sentence.  (See *Cook, supra*, 7 Cal.5th at p. 451; accord *Sepulveda, supra,* 47 Cal.App.5th at p. 300.)  In asking the trial court to approve funds for Dr. Minagawa, defendant did not purport to be offering a response to prosecution expert.  In *Franklin* proceedings, defendants are not building a defense.  *Franklin* hearings are an evidence preservation mechanism to collect evidence that will be used before the parole board on a later date.  To wit:  "[o]ur Supreme Court in [] *Cook*[*, supra,*] 7 Cal.5th [at page] 451 [] clarified inmates who are entitled to a youth offender parole hearing under section 3051 'may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final.'  When considering the significance of *Franklin*'s evidence preservation function in the statutory scheme, the court made the following observation: '*Franklin* processes are more properly called "proceedings" rather than "hearings."  A hearing generally involves definitive issues of law or fact to be determined with a decision rendered based on that determination.  [Citations.]  A

proceeding is a broader term describing the form or manner of conducting judicial business before a court.  [Citations.]  While a judicial officer presides over a *Franklin* proceeding and regulates its conduct, *the officer is not called upon to make findings of fact or render any final determination at the proceeding's conclusion.  Parole determination are left to the Board.*'  (*Id.* at p. 449, fn. 3.)"  (*Lipptrapp, supra,* 59 Cal.App.5th at p. 892, italics added.)

Nothing in the case law cited by defendant convinces us that Sixth Amendment protections "to have the assistance of counsel for [one's] *defense*" (italics added) stretch so far as to include a right to public funding for an expert to use in *Franklin* proceedings.  (See *Ake v. Oklahoma*[*, supra,*] 470 U.S. [at pp.] 72, 76 [considering the trial court's rejection of as pretrial motion to appoint a psychiatrist in a capital case under the Fourteenth Amendment's due process clause]; *People v. Williams* (2006) 40 Cal.4th 287, 294, 303-304 [considering a claim that the trial court did not authorize sufficient funds to pay for an investigator to be used in preparing for the penalty phase of a capital trial]; *People v. Guerra* (2006) 37 Cal.4th 1067, 1084-1086 [court concluded defendant failed to demonstrate that an alcohol-induced electroencephalogram (EEG) defendant sought in pretrial motions in a capital trial was reasonably necessary]; *People v. Alvarez* (1996) 14 Cal.4th 155, 234 ["An appellate court reviews a trial court's ruling on an application for authorization to incur expenses *to prepare or present a defense* for abuse of discretion," italics added]; *Corenevsky, supra,* 36 Cal.3d at pp. 313-315 [requests for county-funded expert services at issue were made in anticipation of trial]; *People v. Tran, supra,* 20 Cal.App.5th at p. 570 [Sixth Amendment rights not at issue]; *People v. Stuckey, supra,* 175 Cal.App.4th at pp. 906-907, 917-918 [finding no encroachment on the right to effective assistance of counsel when the trial court denied the defense's request to continue a sentencing hearing to allow for the appointment of and examination by a psychotherapist and by a drug treatment evaluator].)

The defendant has failed to demonstrate a Sixth Amendment entitlement to public funds to retain an expert during *Franklin* proceedings.

DISPOSITION

The trial court's ruling is affirmed.

_____

HULL, Acting P. J.

We concur:

_____

RENNER, J.

_____

McADAM, J.*

---

\* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.